# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

WARREN I.,

                       Plaintiff,

      v.                                  5:20-CV-495
                                            (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

---

KIMBERLY A. SLIMBAUGH, ESQ., for Plaintiff
MOLLY CARTER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.   PROCEDURAL HISTORY

On May 24, 2017, plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning May 19, 2014. (Administrative Transcript ("T") 174-83).  Plaintiff's application was denied initially on July 31, 2017. (T. 103-04).  Administrative Law Judge ("ALJ") Jude B. Mulvey granted plaintiff's request for a hearing and heard testimony from plaintiff and vocational expert Robert Baker on February 12, 2019.  (T. 52-82).  On February 27, 2019, the ALJ issued an order denying plaintiff's claim.  (T. 15-27).  The ALJ's

decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 24, 2020.  (T. 1-6).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational

2

factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review "–even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.    FACTS

Plaintiff was born on May 5, 1972, making him 46 years old on the date of the administrative hearing. (T. 59). He completed high school and had some college-level education. (*Id.*). Plaintiff had a driver's license and retained the ability to drive. (*Id.*). He lived in a house with his mother and father. (*Id.*).

The last full-time job plaintiff held was as a residence counselor in 2006. (T. 62). After 2006, plaintiff held various part-time positions, including personal care assistant and desk attendant. (T. 61-67). Plaintiff underwent spinal laminectomy surgery in May 2014. (T. 59-60). Although he returned to work after the surgery, his continued back pain prevented him from working long hours. (T. 61). By 2016, the pain had become "overwhelming." (T. 61). Plaintiff experienced constant pain in his low back and pelvic area. (T. 68). He also experienced pain radiating down his legs and into his feet; however, this pain was "controlled through medication." (T. 68). In addition to

surgery and medication, plaintiff attempted to treat his back pain with different types of injections.  (T. 68).  He also underwent a one-week spinal stimulator trial; however, "that wasn't something that worked."  (*Id.*).  The pain medication affected plaintiff's memory and concentration.  (T. 68-69).  At home, plaintiff laid on the floor for pain relief, for a combined six to seven hours a day.  (T. 70).  Although the medication took care of his leg pain and spasms, he had decreased strength.  (T. 71).  Plaintiff was considering a lumbar fusion as his next course of treatment.  (T. 72-73).

Plaintiff testified that because of his back pain, he could not sit for more than fifteen minutes without becoming uncomfortable and needing to change positions.  (T. 69).  He could not stand for more than ten to fifteen minutes, or walk for more than fifteen to twenty minutes.  (*Id.*).  He required a cane for walking long distances.  (*Id.*).  Plaintiff could not lift more than five pounds.  (T. 69-70).  He had difficulty bending and climbing more than one flight of stairs.  (T. 70).

Plaintiff also took medication for mental health issues, including bipolar disorder, depression, and anxiety.  (T. 71-72).  The medication affected his concentration and memory, but allowed him to "function."  (*Id.*).

The ALJ's decision and the parties' briefs provide a detailed statement of the medical and other evidence of record.  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.  **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful

activity ("SGA") since his alleged onset date. (T. 17).  At step two of the sequential evaluation, the ALJ found that plaintiff's degenerative disc disease of the lumbar spine was a severe impairment.  (*Id.*)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment.  (T. 19).

At step four, the ALJ found that plaintiff had the RFC to perform less than the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.*). Specifically, the ALJ found that plaintiff could not climb ladders, ropes or scaffolds, but could occasionally climb stairs, crouch, stoop, crawl, and kneel.  (*Id.*).  He should avoid moderate exposure to extreme temperatures, humidity and wetness.  (T. 19-20). The ALJ further found that plaintiff required the use of a cane for prolonged ambulation, walking on uneven terrain or ascending and descending slopes.  (T. 20). Last, the ALJ found that claimant should be permitted to sit after standing for thirty minutes, and to change positions for up to five minutes without being off task.  (*Id.*).

Next, the ALJ found that plaintiff was unable to perform his prior relevant work. (T. 25).  However, the ALJ evaluated the VE testimony and found that plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (T. 27).  Thus, the ALJ found that plaintiff was not disabled.  (*Id.*).

## V.  **ISSUES IN CONTENTION**

Plaintiff raises the following arguments in support of his position that the ALJ's decision is not supported by substantial evidence:

> 1.     The ALJ erred in evaluating the opinion of plaintiff's orthopedic surgeon, Thomas Haher, M.D.

6

2.      The ALJ erred in evaluating plaintiff's RFC.

3.      The ALJ erred in evaluating plaintiff's testimony, in violation of SSR 16-3p.

4.      Plaintiff is unable to perform sustained work activity as defined by SSR 96-8p.

(Plaintiff's Brief ("Pl.'s Br.") at 10-17) (Dkt. No. 11).  Defendant contends that the ALJ properly evaluated the medical evidence, along with plaintiff's subjective statements, and that the Commissioner's decision is supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 3-16) (Dkt. No. 12). For the following reasons, this court finds that remand is warranted because the ALJ failed to apply the correct legal standards in reaching her decision, calling into question whether her RFC determination for modified light work is supported by substantial evidence.

## DISCUSSION

### VI.    RFC/EVALUATING MEDICAL EVIDENCE

**A.    Legal Standards**

**1.    RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent

7

work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions,

citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Evaluating Medical Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).  The two "most important factors

for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.  An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion.  *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).  However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5).  *Id.* at §§ 404.1520c(b)(3),

416.920c(b)(3).

> **B.  Application**

Plaintiff argues that the ALJ improperly assessed the medical opinions of record, including that of treating orthopedic surgeon, Thomas Haher, M.D.  As a result, plaintiff contends, the ALJ's RFC for modified light work is not supported by substantial evidence.  In response, defendant maintains that the ALJ's evaluation of the medical evidence was sufficient, and that plaintiff has failed to undermine the substantial evidence supporting the ALJ's RFC determination.  For the following reasons, this court finds that the ALJ's evaluation of the medical evidence of record was legally insufficient and warrants remand.

In reaching her RFC determination, the ALJ considered a number of medical opinions concerning plaintiff's physical limitations.[1]  On July 13, 2017, consultative examiner Elke Lorensen, M.D. examined plaintiff and reviewed a lumbosacral spine x-ray.  (T. 480-84).  Subsequent to her examination and imaging review, Dr. Lorensen opined that plaintiff had "[n]o gross limitation sitting, standing, walking, [or] handling small objects with the hands.  (T. 483).  She further opined that plaintiff had "[m]oderate limitations for bending, lifting, and reaching."  (*Id.*).

Plaintiff's treating orthopedic surgeon, Dr. Thomas Haher, prepared a medical

---

[1]Plaintiff does not appear to dispute the ALJ's evaluation of the evidence as it relates to his alleged mental impairments, nor does he argue that the RFC determination is deficient in this regard.

11

source statement ("MSS") on September 11, 2017.  (T. 696-99).  The record reflects that plaintiff treated with Dr. Haher for low back pain for over three years.  (T.  470). In his MSS, Dr. Haher noted that plaintiff's prognosis was "guarded," and that he exhibited decreased range of motion in his low back.  (T. 696).  With respect to functional limitations, Dr. Haher opined that plaintiff could only walk half a city block without rest or severe pain.  (T. 697).  He further opined that plaintiff could only sit for ten minutes at a time for no more than four hours total in an eight-hour work day, and stand for five minutes at a time for no more than two hours in an eight-hour work day. (*Id.*).  Among other functional limitations, Dr. Haher opined that plaintiff could never lift more than ten pounds in a competitive work situation, and could rarely twist, stoop/bend, crouch/squat, or climb stairs.  (T. 698).  With respect to time off task and absenteeism, Dr. Haher determined that plaintiff was likely to be off task 25% or more of the time during a typical workday, and that his impairments or treatment would cause him to miss more than four days of work per month.  (T. 699).  Dr. Haher indicated that plaintiff's pain, paresthesias, and numbness would require him to take unscheduled breaks for approximately ten minutes every hour.  (T. 697).

The record also contains a MSS by plaintiff's primary care physician, Federica Manetti, M.D, prepared on May 30, 2018.  (T. 700-03).  Like Dr. Haher, Dr. Manetti indicated that plaintiff's prognosis was guarded, citing to objective signs including decreased range of motion and  "decreased sensation to pinprick and light touch" in the

lower extremities.  (T. 700).  She opined that plaintiff could sit for no more than ten

minutes and stand for no more than five minutes at one time, and could not sit, stand, or

walk for more than two hours in an eight-hour workday.  (T. 701).  Like Dr. Haher, Dr.

Manetti opined that plaintiff required a job that permitted changing positions and

periods of walking around.  (*Id.*).  According to Dr. Manetti, plaintiff would require

unscheduled breaks approximately every five to ten minutes.  (T. 701).  She indicated

that plaintiff could rarely lift less than 10 pounds, and could never twist, bend, crouch

or climb ladders.  (T. 702).  Dr. Manetti further opined that plaintiff retained 50%

capacity for fine and gross manipulation with his upper extremities.  (*Id.*).  With respect

to reaching, she opined plaintiff could only use his arms 5% of the time during an eight-

hour workday for reaching in front of his body and overhead.  (*Id.*).  She indicated that

plaintiff would be off task 25% or more of the time during a typical workday.  (T. 703).

The ALJ specifically addressed each of the aforementioned opinions in her

written decision and identified the pertinent findings from each medical source.  (T. 23-

25).  The ALJ did not, however, provide a discussion regarding how persuasive she

found each medical sources' opinion, pursuant to 20 C.F.R. §§ 404.1520c and

416.920c.  The ALJ was obviously aware of the recently updated standards for

evaluating medical opinions, as she cited to the new regulations in her decision.  (T.

20).  Morever, the ALJ stated in pertinent part:

As for medical opinion(s) and prior administrative medical

13

finding(s), we will not defer or give any specific evidentiary
weight, including controlling weight, to any prior
administrative medical finding(s) or medical opinion(s),
including those from your medical sources.

(T. 23) This language is taken directly from the text of 20 C.F.R. §§ 404.1520c,

416.920c.  Curiously, however, the ALJ proceeded to perform the precise analysis she

had rejected only a paragraph earlier–assigning Dr. Lorensen's opinion "partial

weight," Dr. Haher's opinion "some weight," and Dr. Manetti's opinion "partial

weight."  (T. 23-25).  Although the ALJ's section dedicated to the evaluation of

medical source opinions spans approximately three pages, the majority is merely a

recitation of each medical source's findings.  (*Id.*).  There is sparse explanation or

discussion found therein.

Absent any specific guidance from the Second Circuit to the contrary,[2] this court

does not go so far to find that an ALJ's assignment of evidentiary weight to a medical

opinion in a claim filed after March 27, 2017, by itself, renders the decision legally

insufficient.  However, the court is less inclined to excuse an ALJ's failure to discuss

the persuasiveness of a medical opinion in any specific detail, per 20 C.F.R. §§

404.1520c(a)-(c) and 416.920c(a)-(c).  The ALJ's burden of articulating the basis for

her medical opinion evaluation has not been significantly altered by the new

[2]As of the date of this decision, the Second Circuit has yet to consider any cases applying 20
CFR §§ 404.1520c and 416.920c. This is not surprising, given that courts in this Circuit only began
applying these new regulations in opinions issued within the last few years.

regulations, as "the factors to be considered in weighing the various medical opinions in a given claimant's medical history [remain] substantially similar" to those former regulations contained in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (listing cases). Regardless of any allusion to the old regulations, an evaluation of the medical opinion evidence which sufficiently comports with the essence of the new regulations, and in particular sets forth a sufficient explanation of the ALJ's consideration of the supportability and consistency factors, should withstand judicial scrutiny. On the other hand, an ALJ's failure to adequately consider and apply the new regulatory factors necessitates remand.

Having reviewed the ALJ's application of legal standards in this case, this court cannot say that the ALJ sufficiently complied with the mandates of the new regulations regarding the evaluation of medical opinions. As discussed below, the ALJ's error did not only include the failure to explain how persuasive she found the opinions of Dr. Lorensen, Dr. Haher, and Dr. Manetti; she also failed to adequately address the supportability and consistency factors, as required under 20 C.F.R. §§ 404.1520c(b)(2) and 416.927(c)(b)(2).

The ALJ afforded Dr. Lorensen's opinion "partial" weight, noting that her "one time examination is not consistent with the complete record of medical evidence that indicates greater restrictions." (T. 23). Clearly, however, the ALJ relied on the

15

consultative examiner's findings to some extent with respect to plaintiff's ability to perform the standing, sitting, and walking requirements of light work, as both Dr. Haher and Dr. Manetti opined that plaintiff could not satisfy such exertional requirements.

Despite her apparent reliance on the opinions formed by Dr. Lorensen, the ALJ's assessment of that opinion did not provide a discussion consistent with the requirements of  20 C.F.R. §§ 404.1520c and 416.920c.  The ALJ's lack of explanation regarding the supportability and consistency factors is of particular concern.  The "supportability" factor asks how well a medical source supported their opinion(s) with "objective medical evidence" and "supporting explanations." See 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The new rules provide that the strength of a medical opinion is increased as the relevance of the objective medical evidence and explanations increase.  *Id*.  In other words, "supportability is an inquiry geared toward assessing how well a medical source supported and explained their opinion(s)." *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10.

Here, the ALJ failed to discuss what, if any, "objective medical evidence" and/or "supporting explanations" provided by Dr. Lorensen she relied on in evaluating the opinion.  Considering the brevity of Dr. Lorensen's medical source statement, and lack of supporting explanation, the court questions how the ALJ came to the conclusion that the consultative examiner's opinion constituted substantial evidence for the RFC

determination. This is especially true, considering that Dr. Lorensen's opinion is directly contradicted by the opinions provided by two of plaintiff's treatment providers, which otherwise do not support the ALJ's finding that plaintiff could engage in substantial gainful employment.

The ALJ also failed to adequately address the consistency factor with respect to Dr. Lorensen's opinion.  The new rules provide that the greater the consistency between a particular medical opinion and the other evidence in the medical record, the stronger that medical opinion becomes. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3). "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them."  *Cuevas v. Comm'r of Soc. Sec*., 2021 WL 363682, at *10.

In her decision, the ALJ actually refers to a *lack* of consistency between Dr. Lorensen's opinion with the "complete record of medical evidence that indicates greater restrictions."  (T. 23).  The ALJ provides no further explanation as to what portions of the opinion are inconsistent with which medical evidence, and what, if any, of Dr. Lorensen's limitations garner support from the longitudinal record. Nevertheless, the ALJ's brief reference to consistency clearly detracts weight, or persuasiveness, from the less restrictive findings of Dr. Lorensen–the only medical source of record who opined that plaintiff could perform the standing, sitting and walking requirements of light work.  Considering the ALJ's reliance on Dr. Lorensen's

17

opinion, the lack of explanation surrounding it degree of consistency with the longitudinal record precludes the court from determining whether substantial evidence supports the ALJ's RFC determination. *See Hickman ex rel. M.A.H. v. Astrue*, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.' ").

The ALJ's application of the new regulations is equally insufficient as to Dr. Haher and Dr. Manetti's more restrictive opinions.  In evaluating both opinions, the ALJ focused  on the their lack of consistency with the treating providers' physical examination of plaintiff performed that same day.  Ultimately, the ALJ found that Dr. Haher and Dr. Manetti's restrictive limitations were inconsistent with their contemporaneous, unremarkable objective findings upon examination.  (T. 24-25). However, in limiting her consistency evaluation in such a manner, the ALJ neglected to address the fact that "evidence from a medical source who has a longstanding treatment relationship with an individual may contain some inconsistencies over time due to fluctuations in the severity of an individual's impairments." *Revisions to Rules*, 82 FR 5844-01.  Although plaintiff's findings upon examination may have been benign on the date of the examinations, the longitudinal record contains other evidence that could, arguably, support the treating sources' restrictive opinions.  Although the ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony" in her decision, *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981), the ALJ's failure to

address any other evidence of record goes against the agency's mandate that an ALJ consider "the extent to which a medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Revisions to Rules*, 82 FR 5844-01.

The ALJ's discussion of the supportability factor relative to Dr. Haher and Dr. Manetti's opinions is equally wanting, as it lacks any discussion as to the degree of explanation provided in each opinion, including the clinical findings and objective signs cited, for the restrictive limitations set forth.

The new regulations promulgated by the Social Security Administration set forth a "minimum level of articulation" to be provided in determinations and decisions, in order to "provide sufficient rationale for a reviewing adjudicator or court."  82 FR 5844-01; *see* 20 C.F.R. §§ 404.1520c(b) and 416.920c(b) ("We *will* articulate in our determination or decision how persuasive we find all of the medical opinions . . . in your case record[.]") (emphasis added); §§ 404.1520c(b)(2) and 416.920c(b)(2) ([W]e *will* explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision.") (emphasis added). As discussed, the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether her disability determination was supported by substantial evidence. On remand, the ALJ should articulate how persuasive she finds the medical opinions of record, pursuant to 20

19

C.F.R. §§ 404.1520c and 416.920c.  In particular, the ALJ should consider the relevant

factors, and specifically explain how she considered the supportability and consistency

factors as to each medical opinion per 20 C.F.R. §§ 404.1520c(b)(2) and

416.920c(b)(2).

## VII.   NATURE OF REMAND

Because remand is necessary for further administrative proceedings, this court

need not address plaintiff's additional arguments.  See, e.g., *Bell v. Colvin*, No.

5:15-CV-01160, 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to

reach arguments "devoted to the question whether substantial evidence supports

various determinations made by [the] ALJ" where the court had already determined

remand was warranted); *Morales v. Colvin*, No. 13-CV-6844, 2015 WL 2137776, at

*28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding

the ALJ's factual determinations "given that the ALJ's analysis may change on these

points upon remand").

"When there are gaps in the administrative record or the ALJ has applied an

improper legal standard . . . remand to the Secretary for further development of the

evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

This court cannot conclude that "substantial evidence on the record as a whole

indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand

solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir.

1996).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.


Dated: March 8, 2021

Andrew T. Baxter
U.S. Magistrate Judge